**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NJSC NAFTOGAZ OF UKRAINE, et al.,**<br>   **Petitioners,**<br><br>   **v.**<br><br>**THE RUSSIAN FEDERATION,**<br>   **Respondent.** | **Civ. A. No. 23-1828 (JDB)** |

## MEMORANDUM OPINION & ORDER

Nearly a decade ago, several Ukrainian companies (collectively, "NJSC Naftogaz of Ukraine" or "petitioners") initiated arbitration against the Russian Federation, seeking compensation for Russia's expropriation of their investments in Crimea. The arbitration tribunal issued the Final Award, awarding petitioners over $4.2 billion in compensation. Russia has subsequently sought to set aside the Final Award in The Hague Court of Appeal ("Hague Court") and that court's decision on Russia's appeal remains pending. Meanwhile, NJSC Naftogaz of Ukraine petitions this Court to enforce the Final Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").

Russia moved to dismiss the enforcement proceedings in this Court for lack of jurisdiction. On the parties' joint request, this Court originally stayed this action until April 1, 2026, pending the Hague Court's decision. Now that date has passed, and Russia has moved to renew the stay until the Hague Court decides the validity of the Final Award and the U.S. Supreme Court reaches a decision on two certiorari petitions that concern the arbitration exception to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). Petitioners oppose a renewed stay. Ultimately, this Court finds that judicial economy favors an expeditious resolution of this dispute

1

and the balance of potential hardships from a continued stay tips in petitioners' favor.  Accordingly, this Court denies Russia's motion for a renewed stay.

## BACKGROUND

This dispute dates back nearly a decade to an arbitration initiated by petitioners against the Russian Federation under the Russia-Ukraine bilateral investment treaty (the "BIT").  Opp'n to Renewed Mot. to Stay ("Pet'rs' Opp'n") [ECF No. 39] at 3.  Petitioners are Ukrainian oil and gas companies and were the largest operators in natural gas production, transportation, and distribution in Crimea.  Id.  After the Russian Federation seized control of Ukraine's Crimean Peninsula, and with it petitioners' investments in Crimea, petitioners initiated arbitration "seeking compensation for Russia's unlawful expropriation of their investments."  Id.

The arbitration tribunal initially issued a Partial Award, finding that the tribunal had jurisdiction over petitioners' claims and Russia was liable, clearing a path for the tribunal to issue the subsequent Final Award.  Petition to Confirm [ECF No. 1] ¶ 3.  Thereafter, Russia sought to set aside the Partial Award in the Hague Court.  Renewed Mot. to Stay ("Resp't's Mot.") [ECF No. 36-1] at 3.  The Hague Court annulled the Partial Award in part but only "to the extent that the arbitral tribunal ruled that it has jurisdiction to assess all claims, since it has jurisdiction only to rule on investments made on or after January 1, 1992."  Id.  Russia subsequently appealed the Hague Court's judgment regarding the Partial Award to the Supreme Court of the Netherlands and that Court dismissed Russia's appeal.[1]  Id. at 4.

---

[1] In dismissing Russia's appeal of the Partial Award, the Supreme Court of the Netherlands found that the Hague Court's annulment of the Partial Award only dismissed the tribunal's ruling "that it had jurisdiction to assess all claims," instead of properly limiting its jurisdiction to claims regarding investments made on or after January 1, 1992.  Resp't's Mot. at 4.  The Supreme Court of the Netherlands instructed that the tribunal must determine which investments were made on or after January 1, 1992, and it was not up to a court of appeals to do so.  Id.

In April 2023, the tribunal issued a Final Award, finding that all petitioners' investments were made after 1992 and awarding over $4.2 billion in compensation.  Id.  Then, Russia brought an action to set aside the Final Award in the Hague Court, which remains ongoing.  Id.  The Hague Court was expected to reach a decision on the validity of the award on July 14, 2026, but "is free to extend the deadline."  Id.

Meanwhile, in June 2023, petitioners filed in this Court to confirm the Final Award pursuant to the New York Convention, which Russia subsequently moved to dismiss for lack of jurisdiction under the FSIA.  Id. at 5.  After the Supreme Court of the Netherlands' ruling on the Partial Award, the parties proposed to stay this action until April 1, 2026.  Joint Status Report [ECF No. 32] at 1, 5.  This Court granted the stay.  Order [ECF No. 33].  After the stay expired, Russia renewed its motion to stay this case pending resolution of the proceedings before the Hague Court and U.S. Supreme Court.  Resp't's Mot. at 17.

In arguing for a renewed stay, Russia contends that its action to nullify the Final Award in the Hague Court supports a stay because the issue may be moot if the Hague Court sets aside the award.  Id. at 11.  Moreover, in the present action, Russia has raised the argument that the arbitration exception to the FSIA does not provide jurisdiction and that the existence of an arbitration agreement between Russia and petitioners must be determined at the jurisdiction stage—the same issue raised in both Russia's certiorari petition in Russian Federation v. Stabil LLC, No. 25-1093 (Mar. 13, 2026), appealing Stabil LLC v. Russian Federation, 167 F.4th 506 (D.C. Cir. 2026),[2] and Spain's certiorari petition in Kingdom of Spain v. Blasket Renewable

---

[2] The D.C. Circuit consolidated Stabil LLC v. Russian Federation, Civ. A. No. 22-00983, 2024 WL 5093202 (D.D.C. Dec. 12, 2024), and JSC DTEK Krymenergo v. Russian Federation, Civ. A. No. 23-03330, 2025 WL 1148347 (D.D.C. Apr. 17, 2025), for argument and wrote a single opinion finding the arbitration exception to the FSIA applied and affirming the denial of Russia's motion to dismiss for lack of subject matter jurisdiction.  Stabil LLC v. Russian Fed'n, 167 F.4th 506 (D.C. Cir. 2026).

Investments, LLC, No. 24-1130 (May 1, 2025), appealing NextEra Energy Global Holdings v. Kingdom of Spain, 112 F.4th 1088 (D.C. Cir. 2024). Resp't's Mot. at 5-6. Since Russia filed its motion to stay and reply with this Court, the U.S. Supreme Court denied both the Stabil and Blasket certiorari petitions. Russian Fed'n v. Stabil LLC, No. 25-1093, 2026 WL 1855103 (U.S. June 29, 2026); Spain v. Blasket Investments LLC, No. 24-1130, 2026 WL 1855038 (U.S. June 29, 2026).

In response, petitioners filed their opposition to Russia's renewed motion to stay. Pet'rs' Opp'n at 1. Petitioners disagree with Russia's arguments in favor of a stay, asserting that the Hague Court proceedings "have no bearing on this Court's jurisdiction" and the certiorari petitions "do not relieve this Court from its obligation to apply binding precedent." Id. at 2 (citation modified). Further, petitioners assert that they originally agreed to "stay this action solely due to resource constraints resulting from Respondent's ongoing invasion of Ukraine, which compelled petitioners to prioritize recognition and enforcement proceedings in other jurisdictions," and that the prior agreement does not support a renewed stay. Id. at 6 (citation modified).

With briefing from both parties, the renewed motion to stay is now ripe for resolution.

## LEGAL STANDARD

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," Dietz v. Bouldin, 579 U.S. 40, 47 (2016), including the broad discretion to stay a case, LLC SPS Stileks v. Republic of Moldova, 985 F.3d 871, 880 (D.C. Cir. 2021).

When exercising its discretion to stay proceedings, a court must "'weigh competing interests and maintain an even balance,' between the court's interests in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732-33 (D.C. Cir. 2012) (quoting Landis v. N. Am. Co., 299 U.S. 248, 255 (1936)). Those interests must

be considered "in the light of the particular circumstances of the case."  SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980).  Judicial economy imposes "an obligation [on judges] to manage their dockets to conserve limited resources" and "plays a paramount role in trying to maintain an orderly, effective, administration of justice."  In re Monitoring of Glob. Positioning Sys. Info., 646 F. Supp. 3d 116, 129 (D.D.C. 2022) (quotation omitted); see also Landis, 299 U.S. at 254.  And when considering the parties' respective hardships, the party moving for "a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [they] pray[] will work damage to some one else."  Landis, 299 U.S. at 255.

"Under the New York Convention, a district court may . . . impose a stay of [] confirmation proceedings if an application to vacate the award has been made in another jurisdiction."  Stileks, 985 F.3d at 879; see also New York Convention art. VI, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (giving judges discretion in enforcing or staying enforcement of an arbitral award). And when determining if a stay is proper, judges in this District have typically looked to the six-factor assessment established by the Second Circuit in Europcar v. Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310 (2d Cir. 1998).[3]  See, e.g., Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas, 314 F. Supp. 3d 95, 105-08 (D.D.C. 2018); Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela, 300 F. Supp. 3d 137, 149-51 (D.D.C. 2018).

---

[3] The Europcar factors are:

 "(1) [T]he general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation; (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved; (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review; (4) the characteristics of the foreign proceedings . . . ; (5) a balance of the possible hardships to each of the parties . . . ; and (6) any other circumstances that could tend to shift the balance in favor of or against adjournment."

156 F.3d at 317-18.

Recently, the D.C. Circuit instructed that "a district court would abuse its discretion if it failed to consider the first and second [Europcar] factors"—"(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation" and "(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved"—but the Court declined to endorse all six factors as mandatory. Stileks, 985 F.3d at 879-80 (quoting Europcar, 156 F.3d at 317-18). Thus, courts in this District analyze the general considerations for a stay—judicial economy and hardship to the parties—with special attention to the first two Europcar factors. See Hulley Enters. Ltd. v. Russian Fed'n (Hulley II), Civ. A. No. 14-1996, 2022 WL 1102200, at *6 (D.D.C. April 13, 2022); Belize Soc. Dev. Ltd., 668 F.3d at 732-33.

## **ANALYSIS**

### I.    **Judicial Economy**

"[T]he primary goal of the [New York] Convention is to facilitate the recognition and enforcement of arbitral awards." Stileks, 985 F.3d at 880 (quoting Europcar, 156 F.3d at 318). And "protracted and expensive litigation" contravenes both the Convention's goal of award facilitation and the Court's interest in judicial economy. See Europcar, 156 F.3d at 317; Stileks, 985 F.3d at 880. Russia argues that a stay is necessary to "conserve [judicial] resources" and avoid "inconsistent proceedings" while the Hague Court proceedings concerning the validity of the Final Award are ongoing and while the certiorari petitions before the U.S. Supreme Court regarding the arbitration exception to the FSIA are pending. Resp't's Mot. at 9. But because the Hague Court proceedings have no bearing on the jurisdictional issue presently in front of this Court and the U.S. Supreme Court has now denied both certiorari petitions, judicial economy favors proceeding with this action.

**A.  The Hague Court Proceedings**

The "power to issue a stay may be appropriately exercised where a separate proceeding bearing upon the case is pending."  Hulley Enters. Ltd. v. Russian Fed'n (Hulley I), 211 F. Supp. 3d 269, 276 (D.D.C. 2016).  Generally, "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests."  Naegele v. Albers, 355 F. Supp. 2d 129, 141 (D.D.C. 2005) (quotation omitted).  However, that is not true when separate forums are litigating different issues, as here.

The D.C. Circuit has made clear that "a foreign court's order ostensibly setting aside an arbitral award has no bearing on the district court's jurisdiction and is instead an affirmative defense properly suited for consideration at the merits stage."  Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria (P&ID), 27 F.4th 771, 772 (D.C. Cir. 2022) (emphasis added); see Stabil, 167 F.4th at 518 (explaining that "questions about whether an arbitration agreement covers a particular investment pertain to the scope of the agreement and are not jurisdictional" (quotation omitted)). In other words, "[t]he validity or enforceability of an arbitral award is a merits question" that courts need not answer at the jurisdictional stage.  P&ID, 27 F.4th at 776; see Human v. Czech Republic—Ministry of Health, 824 F.3d 131, 138 (D.C. Cir. 2016) ("Whether the arbitration award is final will be a question going to the merits of the case . . . .").

Following the Circuit's instructions, judges in this District allow jurisdictional issues to move forward while the validity of an award is being challenged in ongoing foreign proceedings. See, e.g., Hulley II, 2022 WL 1102200, at *8-9 (finding the jurisdictional issues could proceed despite ongoing set-aside proceedings elsewhere because the "assessment of [a federal district court's] jurisdiction is independent of any Dutch court ruling to set-aside—or not—the award"); see also JSC DTEK Krymenergo v. Russian Fed'n, Civ. A. No. 23-3330, 2025 WL 1148347, at *6-

7 (D.D.C. Apr. 17, 2025) (denying Russia's request for a stay in district court in spite of "ongoing proceedings at [t]he Hague Court of Appeal to set aside the arbitral award").

Similarly, the sole challenge Russia raises in the Hague Court concerns the validity of the Final Award, Resp't's Mot. at 3-4, which is "independent" from an "assessment of this Court's jurisdiction," Hulley II, 2022 WL 1102200, at *8.  And presently, this Court need only assess its jurisdiction, not the merits.  See P&ID, 27 F.4th at 772.

Moreover, Russia's argument that a stay is necessary because proceeding now "requires the parties to engage in litigation that may ultimately become moot" is mere speculation, which is not enough to justify a stay.  See Resp't's Mot. at 9-11.  The D.C. Circuit rejected a similar argument made by Moldova and found that "simply asserting" that there is a "high probability that the award will be overturned" "is insufficient."  Stileks, 985 F.3d at 880-81 (citation modified). The New York Convention gives the enforcing court "complete latitude either to grant an exequatur immediately, if [the judge] considered that there was no reason to refuse it, or to await the outcome of proceedings for its annulment . . . ."  U.N. Conference on International Commercial Arbitration, Summary Record of the Eleventh Meeting, U.N. Doc. E/CONF.26/SR.11, at 5 (Sep. 12, 1958).[4] In other words, petitioners' claims are currently live, and this Court can address the effect of any future set aside of the original award at that time.

Russia's arguments in support of a stay also misinterpret the judicial resources required to proceed.  See Resp't's Mot. at 9-11.  Ruling on a "motion to dismiss on jurisdictional grounds . . .

---

[4] Russia also asserts that courts commonly decline to enforce awards that have been set aside.  Resp't's Mot. at 9-10 (citing TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 930 (D.C. Cir. 2007) (finding "appellants have no cause of action in the United States to seek enforcement of the award" because it "was lawfully nullified by the country in which the award was made")).  But again, the Hague Court has yet to reach a decision on Russia's appeal of the Final Award, and this Court cannot determine the award's validity before resolving issues of jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (holding that a court must determine it has jurisdiction to hear the case before preceding to an assessment of whether the plaintiff has a cause of action).

involves no outsized use of judicial resources" when the parties have largely briefed the issue. DTEK, 2025 WL 1148347, at *7. And "[t]he Court need not wait to decide fully briefed issues" because "judicial economy . . . favors swift adjudication." Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan, 590 F. Supp. 3d 262, 270 (D.D.C. 2022).

Here, Russia has briefed its motion to dismiss for lack of jurisdiction, Resp't's Mot. to Dismiss [ECF No. 16], and petitioners have responded, Pet'rs' Opp'n to Mot. to Dismiss [ECF No. 20]. As the parties have agreed, recent facts or law can be addressed through supplemental briefing, Joint Status Report [ECF No. 35] at 8, which does not require any "outsized use of judicial resources," DTEK, 2025 WL 1148347, at *7. Thus, since judicial economy "favors swift adjudication," it disfavors a continued stay of this action. Tethyan, 590 F. Supp. 3d at 270. Moreover, resuming litigation will not run contrary to the general goals of arbitration, see Europcar, 156 F.3d at 317, because assessing this Court's jurisdiction creates "no imminent prospect of confirming the award, much less executing it," DTEK, 2025 WL 1148347, at *7.

Finally, the timing of the Hague Court proceedings does not justify a stay either. See Europcar, 156 F.3d at 317. Russia expropriated petitioners' investments in 2014, which prompted the initiation of arbitration in 2016, a decade ago. Pet'rs' Opp'n at 3. The D.C. Circuit has observed that "more than 10 years" passing since the start of arbitration "is hardly an expeditious resolution of the dispute." Stileks, 985 F.3d at 880 (citations omitted); see also Chevron Corp. v. Republic of Ecuador, 949 F. Supp. 2d 57, 72 (D.D.C. 2013) (finding that a six year long process of arbitration and award confirmation "does not constitute an expeditious resolution of the dispute" (citation omitted)); G.E. Transp. S.P.A. v. Republic of Albania, 693 F. Supp. 2d 132, 139 (D.D.C. 2010) (finding that a delay of four years after initiating arbitration "weighs in favor of confirmation rather than an adjournment"). While the Hague Court could issue a decision very soon, it is free

9

to extend the deadline. Resp't's Mot. at 4. And if the Hague Court upholds the Final Award, there is a real possibility that Russia will appeal its decision to the Supreme Court of the Netherlands, as it did with the Hague Court's ruling on the Partial Award, see Resp't's Mot. at 4, further prolonging this decade-old action. Thus, since the parties have already briefed the jurisdictional issue, this Court finds it would contravene both judicial economy and the first and second Europcar factors to await the Hague Court's ruling on the Final Award and Russia's potential appeal of that ruling to render a decision regarding this Court's jurisdiction.

### B. Certiorari Petitions

Russia also argues that the certiorari petitions in Blasket and Stabil require a stay of this action. Both petitions challenged the D.C. Circuit's ruling in NextEra Energy Global Holdings v. Kingdom of Spain, which concluded that determining the scope of a valid arbitration agreement is a merits question, not a jurisdictional one. 112 F.4th 1088, 1101 (D.C. Cir. 2024) ("[D]isputes about the scope of an arbitration agreement, such as whether a binding arbitration agreement covers a particular dispute, are not jurisdictional questions under the FSIA" and "instead go to the award's enforceability on the merits.").

But the Supreme Court recently denied both Spain's Blasket petition and Russia's Stabil petition.[5] Spain v. Blasket Investments LLC, No. 24-1130, 2026 WL 1855038 (U.S. June 29, 2026); Russian Fed'n v. Stabil LLC, No. 25-1093, 2026 WL 1855103 (U.S. June 29, 2026). Thus, Russia's argument in support of a stay based on the certiorari petitions is moot.[6]

---

[5] The Supreme Court denied the Blasket and Stabil cert petitions after Russia filed its renewed motion to stay and its reply with this Court. See Resp't's Mot.; Reply Mem. [ECF No. 40].

[6] Notwithstanding the Supreme Court's denial of the Blasket and Stabil certiorari petitions, judges in this Court have routinely denied requests to stay due to pending certiorari petitions that may impact the District Court's proceedings. See ACF Renewable Energy Ltd. v. Republic of Bulgaria, 804 F. Supp. 3d 141, 152 (D.D.C. 2025) (rejecting Bulgaria's request for a stay "because the Supreme Court may grant certiorari and reverse the D.C. Circuit's decision in NextEra"); Yukos Cap. Ltd. v. Russian Fed'n, 792 F. Supp. 3d 83, 90-91 (D.D.C. 2025) (rejecting Russia's argument "that this matter should be stayed until four cases are (or may be) decided by the Supreme Court").

## II.    Balance of Hardships

After considering this Court's interest in judicial economy, "the relative hardships must now be identified and considered." Hulley I, 211 F. Supp. 3d at 285; see also Belize, 668 F.3d at 732-33. In moving for a stay, Russia "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [Russia] prays will work damage to some one else." Landis, 299 U.S. at 255. Russia has failed to do so here because, as discussed below, petitioners will suffer significant damage if the stay is renewed.

Russia first argues that forcing it to litigate in this Court "while a Supreme Court decision that may confirm its sovereign immunity is pending would undermine the very immunity from suit that the FSIA seeks to vindicate." Resp't's Mot. at 12. However, as indicated above, the Supreme Court denied both certiorari petitions that would bear on Russia's immunity under the FSIA's arbitration exception. Thus, this no longer creates a hardship for Russia.

Russia also argues that, if this Court were to confirm the award and the Hague Court were to later set it aside, Russia would "undeniably be burdened" if it were "required to 'recover assets seized as a result of this Court's confirmation.'" Id. at 12-13 (quoting CC/Devas (Mauritius) Ltd. v. Republic of India, Civ. A. No. 21-106, 2022 WL 873620, at *5 (D.D.C. Mar. 24, 2022)). But, again, this argument misinterprets the current posture of the case. Deciding the jurisdictional issues does not "mean that confirmation of the underlying arbitral award—the first judicial event that would be in tension with [the Hague Court's] possibly setting that award aside—is imminent." DTEK, 2025 WL 1148347, at *7; see also Tethyan, 590 F. Supp. 3d. at 272 (finding that the "preliminary nature of these proceedings [at the motion to dismiss stage] means that denying a stay would not irreparably harm [respondent].").

And other judges in this District have held that even actual enforcement of an arbitral award is not enough to tip the balance of hardships in the foreign sovereign's favor. See Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela, 146 F. Supp. 3d 112, 136 (D.D.C. 2015) (finding Venezuela's argument "that the over-$700-million Award will draw 'badly needed funds from the public treasury' of the state" was "at least as significant for Gold Reserve, which the Tribunal found had been 'unjustifiably and unlawfully stripped of its investment by the Venezuelan government'" (citation omitted)); cf. Hulley I, 211 F. Supp. 3d at 286 ("[T]he harms alleged follow inevitably from the Russian Federation's being the losing party in an indisputably high-stakes arbitration and a party to ongoing, multi-jurisdictional litigation relating to the validity of the Awards. Such harm to the Russian Federation does not outweigh the benefits of the requested stay and the hardships attendant to denying one.").

Moreover, since Russia's motion to dismiss is "fully briefed" and the parties agreed to supplemental briefing, see Joint Status Report [ECF No. 35] at 8, Russia is left with "little identifiable hardship by proceeding to, at least, the threshold jurisdictional issue." Hulley II, 2022 WL 1102200, at *8. Providing further briefing in support of its motion to dismiss "is hardly an onerous burden" that "justif[ies] an additional prolonged pause of these proceedings to the [petitioners'] detriment." Id. (citation omitted).

Conversely, the potential hardships imposed on petitioners by renewing the stay would be substantial. Petitioners argue that "[f]uther delay would harm [them] by delaying their efforts to recover compensation more than a decade after Russia's expropriation of their investments." Pet'rs' Opp'n at 24. Petitioners also note that further delay of these proceedings "increases the likelihood that [p]etitioners will be unable to realize any part of the Final Award" and would create "a severe disadvantage if this action were stayed while other confirmation actions [against Russia]

12

are allowed to proceed."[7]   Id. at 25.   This Court finds that the balance of hardships tips in petitioners' favor.

Judges in this District have found that delayed recovery of an award creates significant hardship for the party to whom the award is owed because during that time they are denied compensation for unlawful expropriation of their assets.  Hulley II, 2022 WL 1102200, at *5 ("The hardship to the Shareholders—which prevailed in a decade-long arbitration that concluded in 2014—only increases with each passing year . . . ."); Hulley I, 211 F. Supp. 3d at 286 (similar); Tethyan, 590 F. Supp. 3d at 271 (similar).  In other words, "if the Court were to delay confirmation briefing pending [the Hague Court's] set-aside decision and [the Hague Court] did not set aside the award, the result would be a substantial delay in [petitioner's] ability to potentially recover its duly owed compensation."  DTEK, 2025 WL 1148347, at *7.

Delay could itself impact the ability to recover in full or at all, especially given similar enforcement petitions in this District and Russia's ongoing war with Ukraine.  See id. ("[D]elay could itself affect the likelihood of recovery, since other Russian creditors are proceeding with similar confirmation actions in this District and could deplete the same American-held assets that [petitioner] hopes to attach."); Hulley II, 2022 WL 1102200, at *9 (finding that recovery of the award "will be impaired" "[d]ue to economic sanctions and other penalties imposed by the international community against the Russian Federation following its invasion of Ukraine").

Petitioners initiated arbitration seeking compensation for their lost investments nearly a decade ago.  Pet'rs' Opp'n at 3.  A renewed stay would further prolong the ultimate conclusion of

---

[7] Petitioners point out that Russia is part of enforcement proceedings "in five other confirmation petitions in this District alone."  Pet'rs' Opp'n at 25; see also DTEK, 2025 WL 1148347, at *6-8 (denying Respondent's motion to stay); Yukos Cap., 792 F. Supp. 3d at 90-91 (same); Stabil, 2024 WL 5093202, at *6-7 (same); Hulley Enters. Ltd. v. Russian Fed'n, 149 F.4th 682, 692 (D.C. Cir. 2025) (vacating district court's denial of Russia's motion to dismiss and remanding for further briefing); Minute Order, Pub. Joint Stock Co. "State Savings Bank of Ukraine" v. Russian Fed'n, Civ. A. No. 23-00764 (May 18, 2026) (proceeding now before district court after initial stay expired).

the arbitral proceedings.  And delay in recovery is hardship itself.  See Hulley II, 2022 WL 1102200, at *5; Hulley I, 211 F. Supp. 3d at 286; Tethyan, 590 F. Supp 3d at 271.  Further delay of these proceedings increases the difficulty of petitioners recovering at all, since Russia is a party to similar enforcement proceedings in this District, see DTEK, 2025 WL 1148347, at *7, and the threat of economic sanctions on Russia continues, see Hulley II, 2022 WL 1102200, at *9.  Thus, "[w]eighed against [the] de minimis burden, if any, on the Russian Federation by proceeding with this litigation, a continued stay would carry significant hardship for the [petitioners]."  Hulley II, 2022 WL 1102200, at *9.  Ultimately, balancing the hardships between Russia and petitioners favors continuation of the proceedings.

## CONCLUSION

For the foregoing reasons, the Court, guided by the Europcar factors, finds that judicial economy and the potential hardship to petitioners outweighs any burden on respondent from not granting a stay.  The Court therefore denies Russia's renewed motion to stay this action.

* * *

Upon consideration of [36] the motion to stay, and the entire record herein, it is hereby **ORDERED** that the motion is **DENIED**.  It is further **ORDERED** that the stay in this case is lifted and [16] the motion to dismiss is revived.  Respondent shall file any supplement regarding the motion to dismiss, or the associated briefing, by not later than **August 7, 2026,** and Petitioners may file any supplemental submission by **August 21, 2026.**



/s/
JOHN D. BATES
United States District Judge

Date: July 17, 2026

14