**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NJSC NAFTOGAZ OF UKRAINE, et al.,**<br>**Petitioners,**<br>**v.**<br>**THE RUSSIAN FEDERATION,**<br>**Respondent.** | **Civ. A. No. 23-1828 (JDB)** |

## MEMORANDUM OPINION AND ORDER

For ten years, several Ukrainian oil and gas companies have been attempting to resolve a dispute with the Russian Federation over investments they maintained in Crimea prior to 2014, when Russia seized control of Crimea and with it, their investments. Pursuant to a treaty between Russia and Ukraine, the companies initiated arbitration against Russia and obtained an arbitral award of more than $4 billion. The companies then initiated this action, seeking enforcement of the award. Russia moved to dismiss, arguing this Court lacks subject-matter jurisdiction over the action. Although foreign states are generally immune from suit in federal courts, the Court concludes that it has subject-matter jurisdiction under the arbitration exception of the Foreign Sovereign Immunities Act (FSIA). See 28 U.S.C. § 1605(a)(6).

In its motion, Russia also claimed that the Court's exercise of personal jurisdiction over it would run afoul of the Fifth Amendment's Due Process clause, but the Court is bound by D.C. Circuit precedent to reject that argument. Hence, the Court will deny the motion to dismiss.

## BACKGROUND

In 2016, several Ukrainian oil and gas companies initiated arbitration against the Russian Federation under the dispute resolution provisions of the then-operative bilateral investment treaty between the Russian Federation and Ukraine. Pet. [ECF 1] ¶¶ 7, 15, 26. The companies had been

"the largest participants in natural gas exploration, production, transport, storage, processing, and distribution in Crimea" and maintained "substantial investments in Crimea" including permits, equipment, infrastructure, and stored natural gas. Id. ¶ 15. After the Russian Federation seized control of Crimea in 2014, and with it the companies' investments there, the companies initiated arbitration seeking "compensation" for what they describe as "Russia's multiple, wide-ranging violations of the [bilateral investment treaty's] substantive protections with respect to their investments in Crimea." Id. ¶¶ 2, 16–22.

In 2019, the arbitration tribunal issued a Partial Award, determining that the tribunal had jurisdiction over the companies' claims and that the companies had established several violations of the treaty. Partial Award [ECF 1-4] at 94. The Russian Federation commenced proceedings before the Hague Court of Appeal, seeking to set aside the Partial Award. Pet. ¶ 37. The Hague Court of Appeal rejected most of Russia's arguments, upholding the Partial Award in large part. See Hague Court of Appeal Judgment [ECF 1-6] at 100. That court set aside the Partial Award only "to the extent that the arbitral tribunal ruled that it has jurisdiction to assess all claims, since it has jurisdiction only to rule on investments made on or after January 1, 1992." Id. Russia appealed to the Supreme Court of the Netherlands, and the companies filed a cross-appeal. Mot. for Renewed Stay [ECF 36-1] at 4. That court ultimately dismissed both appeals. Supreme Court of Netherlands Judgment [ECF 32-1] at 25–26.

In April 2023, the arbitral tribunal issued a Final Award, determining that "the quantum of compensation due to the [companies] based on the Fair Market Value of [their] expropriated investments in Crimea on the Valuation Date is USD 4,222,875,858.81" "plus interest." Final Award [ECF 1-2] ¶¶ 716, 717(1). Russia then initiated proceedings before the Hague Court of Appeal to set aside the Final Award. First Mot. to Stay [ECF 26-1] at 5.

The companies filed this action in June 2023, seeking to confirm the Final Award pursuant to the New York Convention. Russia moved to dismiss the action for lack of jurisdiction under the FSIA and for lack of personal jurisdiction. Mot. to Dismiss [ECF 16]. After that motion was fully briefed, the parties jointly asked this Court to stay the action until April 1, 2026, the date by which the parties expected the Hague Court of Appeal to issue a decision in the appeal proceeding related to the Final Award. Jan. 10, 2025 Joint Status Report [ECF 32] at 3. The Court granted the request. Order Staying Case [ECF 33]. After the stay expired, Russia filed a renewed motion to stay proceedings because the Hague Court of Appeal had not yet issued its decision. Renewed Mot. to Stay [ECF 36-1]; Apr. 15, 2026 Joint Status Report [ECF 35]. The Court denied the renewed motion, revived Russia's motion to dismiss, and allowed the parties to file supplemental briefing. Order Denying Stay [ECF 42] at 14. The parties have now filed their supplemental briefs and the Russian Federation's motion to dismiss is ripe for consideration.

## ANALYSIS

The Russian Federation argues that this action should be dismissed because the Court lacks subject-matter jurisdiction over the dispute and because the Court cannot exercise personal jurisdiction over it consistent with the Fifth Amendment. Aided by the D.C. Circuit's recent decision rejecting similar arguments raised by Russia against similar petitioners in Stabil LLC v. Russian Federation, 167 F.4th 506 (D.C. Cir. 2026), cert. denied 146 S. Ct. 2799 (2026), the Court finds Russia's arguments unavailing and rejects them.

### I. Subject-Matter Jurisdiction

#### A. This Court has subject-matter jurisdiction pursuant to the FSIA's arbitration exception.

Foreign states are generally "immune from the jurisdiction" of this and other American courts. 28 U.S.C. § 1604. But that general rule is subject to several exceptions, enumerated in the

FSIA. See id. §§ 1605–07. The companies invoke one of those exceptions: the FSIA's arbitration exception. Companies Supp. Br. [ECF 48] at 4 (citing 28 U.S.C. § 1605(a)(6)). Under that provision, this Court has jurisdiction over actions "to confirm an award" made pursuant to certain "agreement[s] to arbitrate" if the "award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

The D.C. Circuit has explained that this Court may proceed under the arbitration exception if it finds three "jurisdictional facts": "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, 112 F.4th 1088, 1100 (D.C. Cir. 2024). The companies bear the "initial … burden of production" as to establishing these facts. Chevron Corp. v. Ecuador, 795 F.3d 200, 204 (D.C. Cir. 2015). Once met, the burden shifts to Russia to "establish the absence of the factual basis by a preponderance of the evidence." Id. The Court determines that the companies have carried their burden of production and finds all three facts are present here.

First, the companies have shown the existence of an arbitration agreement: they have "produc[ed] the [bilateral investment treaty]," which contains an agreement to arbitrate, and the companies' "notice of arbitration" against Russia. Chevron Corp., 795 F.3d at 204; see Treaty [ECF 1-3]; Notice of Arbitration [ECF 20-2]. That is enough. See Stabil LLC, 167 F.4th at 518.

Second, the companies have shown that the tribunal issued an arbitral award, and Russia does not argue to the contrary. The companies produced the tribunal's final award, which orders Russia to pay the companies more than $4 billion. See Final Award [ECF 1-2] at 236. That award "settle[s] the issue." Stabil LLC, 167 F.4th at 521.

Finally, there is a treaty potentially governing award enforcement—the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention), opened for signature June 10, 1958, 21 U.S.T. 2517. The New York Convention, to which the United States is a signatory, is a "multilateral treaty among sovereigns that governs the 'recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought.'" Stabil LLC, 167 F.4th at 513–14 (quoting New York Convention art. I(1)). The D.C. Circuit has "repeatedly" held that the New York Convention is "exactly the sort of treaty Congress intended to include in the arbitration exception." Id. at 522. The Convention satisfies the third requirement for the application of the arbitration exception, subject to two limitations: the arbitrated dispute must "(1) arise out of a legal relationship that is (2) considered as commercial." Id.

Both requirements are met here. A legal relationship exists between the Russian Federation and the companies. Under Article 2(2) of the bilateral investment treaty, Russia and Ukraine each "guarantee[], in accordance with its legislation, the full and unconditional legal protection of investments by investors of the other [country]." Treaty at 9. As the D.C. Circuit has held, that treaty establishes a legal relationship between Russia and Ukrainian companies, even though the companies are not party to the treaty. See Stabil LLC, 167 F.4th at 522–24. That is because "the [bilateral investment treaty] conferred specified benefits upon investors," guaranteeing "Ukrainian investors protection of their investments and fair and equal treatment" when investing in Russia. Id. at 524. The treaty also determines the "extent of the obligations," requiring each country to "ensure that investments made by investors of the other party receive 'treatment no less favorable than that which it accords to its own investors or to investors of any third states.'" Id. at 523 (quoting Treaty (art. 3(1)) at 9); see also Treaty (arts. 4, 5(2), 7(1)) at 9–10) (further defining the

extent of the countries' obligations). And it supplies "the legal framework to govern the arrangement," setting out how disputes between a country and "an investor of the other [country] arising in connection with investments" should be resolved. Stabil LLC, 167 F.4th at 523 (quoting Treaty (art. 9(1)) at 11). Thus, "a legal relationship exists between Russia and the Companies," and there is no question that the arbitrated dispute arose out of that relationship. Id. at 524; Partial Award at 94 (arbitral tribunal concluding Russia committed several violations of the treaty).

And that legal relationship is "commercial." Stabil LLC, 167 F.4th at 524. The arbitral tribunal found that the companies are oil and gas companies engaged in importing gas into Ukraine, storing gas, trading gas, selling gas to consumers and distribution companies, financing the construction of pipelines, leasing pipelines, and pursuing other related activities, and had significant investments in Crimea, which Russia "unlawfully expropriated … without due process or any compensation." Partial Award at 89; see Final Award at 19–21. Those investments—including pipelines, equipment, stored gas, and legal rights (such as the right to use a storage facility or right to use a pipeline system), Final Award at 21–22—are "plainly in connection with commerce … for purposes of the New York Convention." Stabil LLC, 167 F.4th at 525 (citation modified); see id. at 525 (investments including electricity distribution business and petrol stations are commercial); Belize Soc. Dev. Ltd. v. Gov't of Belize, 794 F.3d 99, 104 (D.C. Cir. 2015) (sale of real property and provision of telecommunication services are commercial).

The companies have shown each of the three facts required for the application of the arbitration exception of the FSIA, so this Court has subject-matter jurisdiction over the dispute.

### B. The D.C. Circuit's decision in Stabil LLC v. Russian Federation forecloses several of the Russian Federation's arguments to the contrary.

In Russia's initial motion to dismiss, filed in February 2024, Russia argued that the petition must be dismissed for lack of subject-matter jurisdiction because (1) there is no arbitration

agreement between the parties, (2) the arbitration award is not governed by the New York Convention, (3) the companies are not "private parties" within the meaning of the FSIA's arbitration exception, and (4) the FSIA's waiver exception does not apply. Mot. to Dismiss at 16–37. But earlier this year, the Russian Federation raised two of those arguments in a parallel case before the D.C. Circuit, and that court rejected them.

In Stabil LLC v. Russian Federation, 167 F.4th 506 (D.C. Cir. 2026), several Ukrainian companies (there, an electricity distributor and companies owning and operating petrol stations) that operated in Crimea initiated arbitration against Russia based on violations of the bilateral investment treaty between Russia and Ukraine after Russia seized control of Crimea in 2014. Id. at 512. After securing arbitral awards, the companies petitioned for enforcement of the awards in this Court. Id. Russia argued—as it did here—that the district court lacked jurisdiction under the FSIA because (1) the companies had not shown the existence of an arbitration agreement, and (2) the arbitration awards were not governed by the New York Convention because the awards were geopolitical in nature, rather than commercial. Id. at 518, 521. The D.C. Circuit rejected both arguments. First, it determined that the companies had shown the existence of an arbitration agreement and rejected Russia's arguments to the contrary as going to "the scope of the arbitration agreement and not its existence." Id. at 521. Second, it held that the New York Convention governed the awards, rejecting Russia's argument that the awards were political awards falling "outside the Convention's ambit." Id. at 521–22, 524–26.

As the Russian Federation concedes, Stabil is controlling and forecloses those arguments in this case. Russia Supp. Br. [ECF 45] at 1 ("[S]ome of Russia's jurisdictional arguments have been foreclosed by the D.C. Circuit's decision in Stabil."). Indeed, Russia does not press those arguments in its supplemental brief, filed after Stabil was decided. See generally id. Accordingly,

this Court also rejects Russia's arguments that there is no arbitration agreement between the parties and that the arbitral award is not governed by the New York Convention. See Mot. to Dismiss at 17–27, 29–31.

**C. The arbitration exception need not be invoked by a private party.**

Russia makes only one argument about the applicability of the arbitration exception that is left unresolved by Stabil: it claims that the exception only applies if "the award sought to be enforced" is "the product of an agreement made by the foreign state with or for the benefit of a private party," and the companies are not private parties because they are owned by Ukraine. Russia Supp. Br. at 8–11 (citation modified). In Russia's telling, "[o]nly private parties may invoke the FSIA's arbitration exception." Id. at 8. The companies respond that the arbitration exception's applicability does not turn on whether the plaintiff is a private party. See Companies Supp. Br. at 7. The D.C. Circuit did not have the opportunity to resolve that question in Stabil because the companies at issue there were indisputably private parties. See Russia Supp. Br. at 8. Though it is a close call, the Court determines that the companies have the better argument.

Start with the text. The arbitration exception applies to "any case … in which the action is brought" "to confirm an award" made pursuant to "an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship … concerning a subject matter capable of settlement by arbitration under the laws of the United States." 28 U.S.C. § 1605(a)(6). There is no express statutory requirement that the action to confirm an arbitral award be brought by a private party. Instead, the statute requires only that the award be made pursuant to "an agreement made by the foreign state with or for the benefit of a private party." Id. (emphasis added).

The bilateral investment treaty is such an agreement, made by Russia and Ukraine for the benefit of private parties. That treaty is not "an agreement to arbitrate with an investor" or other private party, because only Ukraine and Russia are parties to the treaty. NextEra Energy, 112 F.4th at 1101. But as explained above, the treaty is an agreement "made 'for the benefit' of a private party," namely, investors. Id. (emphasis added); see Stabil LLC, 167 F.4th at 524 (explaining the bilateral investment treaty "conferred specified benefits upon investors"). "Under the plain terms of the FSIA's arbitration exception [that] type of agreement may support the exercise of jurisdiction over a foreign sovereign." NextEra Energy, 112 F.4th at 1101.

In support of its argument that only private parties can invoke the FSIA's arbitration exception, Russia cites two cases in which the Supreme Court held a particular party could not initiate an action because the party lacked standing under the statutes at issue. Russia Supp. Br. at 12. But unlike the arbitration exception, the statutes in those cases clearly identify who has standing to sue. See Fed. Election Comm'n v. Nat'l Conservative Pol. Action Comm., 470 U.S. 480, 484, 486 (1985) (holding the Democratic Party does not have standing to sue under statute permitting only the "FEC, the national committee of any political party, and individuals eligible to vote for President … to institute such actions"); Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 5–6 (2000) (holding that only a "trustee" is "empowered to invoke" statute stating "[t]he trustee may recover … "). By contrast, the text of the arbitration exception contains no such express requirement that only private parties may invoke it. After all, Congress could have extended the exception only to cases "in which the action is brought by a private party," but it did not include such language.

Russia also focuses on the later use of the word "parties" in the text of the exception; the exception applies to agreements made by the foreign state for the benefit of a private party "to

submit to arbitration all or any differences which have arisen or which may arise between the parties." 28 U.S.C. § 1605(a)(6) (emphasis added). That use of "parties," Russia argues, is a direct reference back to "the foreign state" and "a private party" used earlier in the exception. See Russia Supp. Br. at 11–12. But even if Russia is correct about the meaning of the word "parties," that reference too is a limit on the types of arbitration agreements that the exception applies to, not a limit on what party can invoke the exception. In other words, the exception applies to "any case" "brought" "to confirm an award made pursuant" to an "agreement … to submit to arbitration all or any differences which have arisen or which may arise between the" foreign state and private parties. This is such a case, because the case was brought to confirm an award made pursuant to the bilateral investment treaty, which is an agreement to submit to arbitration disputes between Russia and Ukrainian investors (both private and state-owned). See Treaty (art. 9) at 22; Final Award at 17 (arbitral award made pursuant to the bilateral investment treaty). This reading does not, as Russia contends (Supp. Br. at 18), read the words "private party" out of the statute; this Court would not have jurisdiction to enforce arbitration agreements, or awards made pursuant to agreements, made between two foreign states if the agreement was not made for the benefit of any private parties.

Accordingly, the Court rejects Russia's argument that only a private party may invoke the arbitration exception to the FSIA.

**D. The Court will not reach the companies' implied waiver argument.**

The companies also claim that this Court has jurisdiction over the dispute under the FSIA's waiver exception, arguing that Russia impliedly waived its immunity by signing the New York Convention. Opp'n to Mot. to Dismiss [ECF 20] at 37–41. Although the D.C. Circuit has endorsed this theory in an unpublished opinion, it has never "formally adopt[ed] th[e] theory" and declined to do so again earlier this year. Stabil LLC, 167 F.4th at 526 (citation modified). Because the

Court has concluded it has jurisdiction under the arbitration exception, it need not proceed further to address the waiver exception. See id. at 526 (the "cardinal principle of judicial restraint" is that "courts should resolve no more than is necessary to decide the case").

**II. The Russian Federation's personal jurisdiction argument is foreclosed by D.C. Circuit precedent.**

In its motion to dismiss, the Russian Federation argued that "[t]he application of the FSIA's arbitration exception and exercise of jurisdiction under the FSIA would not comport with due process." Mot. to Dismiss at 41. Russia conceded that the argument was foreclosed by D.C. Circuit precedent, and did not press the argument further in its supplemental brief. Id. at 41; see Russia Supp. Br. As Russia acknowledges, the D.C. Circuit has held that constitutional due process protections are unavailable to foreign states, because a foreign state "is not a 'person' within the meaning of the Due Process Clause." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 85–86 (D.C. Cir. 2002); Stabil LLC, 167 F.4th at 527. Those decisions are binding on this Court, so the Court rejects Russia's personal jurisdiction argument.[1]

* * *

Upon consideration of [16] the Russian Federation's motion to dismiss, [45] the Russian Federation's supplemental brief, [48] the companies' supplemental brief, and the entire record herein, it is hereby **ORDERED** that the motion to dismiss is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: October 26, 2026

[1] In its motion to dismiss, Russia also argued that the petition must be dismissed for lack of personal jurisdiction because the Russian Federation was not properly served. Mot. to Dismiss at 37–40. Russia later withdrew that argument, so this Court will not address it further. See Notice of Withdrawal of Argument [ECF 18] at 1.